

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

April 5, 1960

Miss Edna Cisneros
County Attorney
Willacy County
Raymondville, Texas

Dear Miss Cisneros:

Opinion No. WW-825

Re: Validity of an appli-
cation for an absentee
ballot or of an absentee
ballot signed with an
"X", and related questions.

Your request for an opinion reads in part as follows:

"The County Clerk of this county has asked me
to render him an opinion on the following questions
pertaining to absentee voting. . .:

"1. Can applications for an official ballot be
mailed to the county clerk before the time provided
in subdivisions 3 and 4 of Article 5.05 which reads
'At any time not more than twenty (20) days, nor less
than three (3) days prior to the date of such an elec-
tion, . . .'; in other words, the ballot would not be
mailed out or the vote cast before that time, but could
the application be mailed in to the clerk's office be-
fore that time?

"2. Will an application for an absentee ballot
or the absentee ballot be valid if signed with an "X"?

"Subdivision 15 of Article 5.05 has the provision,
'If the voter cannot sign his name, the witness shall
sign the voter's name wherever such signature is re-
quired by this Code, and the name of the witness there-
under,' but subdivision 6 thereof provides that 'The
board shall compare the signatures on the application
and upon the affidavit on the carrier envelope. In case
the board finds that the signatures correspond, . . .'

"Does the above prohibit the signing of a ballot
or the application for the absentee ballot by an "X"?
And, if the application for the absentee ballot is made
in front of a witness who signs the voter's name, but
the affidavit on the carrier envelope is made in front
of another witness who, in turn, signs the voter's name,
then what effect will that have on the comparison to
be made by the board? The signatures on the two instru-
ments will, of course, be entirely different."

With regard to your first question, this office has held, in opinions rendered before the 1959 amendment to the absentee voting law, that application for an absentee ballot may be made earlier than twenty days before the election and that the clerk may mail a ballot to the voter as soon after the receipt of the application as ballots are available. However, the ballot must be marked by the voter during the period of not more than twenty days nor less than three days prior to the date of the election. Att'y Gen. Op. 0-5779, as modified by Op. 0-5779A, and Op. 0-5993 (1944). The only change in the law which might affect this holding is the amendment to Article 5.05 of the Election Code which was enacted by Chapter 483, Acts of the 56th Legislature, Regular Session, 1959, restricting absentee voting by mail on the ground of expected absence from the county on election day to persons who are absent from the county at the time of making application for the ballot and expect to be absent during the remainder of the period for absentee voting and on election day.

We do not construe the requirement for expected absence during the remainder of the period as limiting time of application to the period for absentee voting. If application is made before the period for absentee voting begins, the period then remaining for absentee voting embraces the entire period from the twentieth day through the fourth day prior to the election.[1] If at the time of making application the voter expects to be absent during this entire period, we find nothing in the law which would preclude him from applying for a ballot before the period begins. Therefore, in answer to your first question we hold that an application can be mailed in to the clerk before the time provided in Subdivisions 3 and 4 of Article 5.05, and the clerk can mail a ballot to the voter before this time if the ballots are available.

Your second question is whether the application for the ballot, or the ballot, is valid if the voter signs with an "X". We shall first set out the provisions in Article 5.05 of the Election Code which are pertinent to this question.

Subdivision 2 of Article 5.05 contains the following provision:

---

[1]Under the provisions of Subdivisions 3 and 4 limiting absentee voting to "not more than twenty days nor less than three days" prior to the date of the election, three full days must intervene between the close of absentee voting and the date of the election. Murchison v. Darden, 171 S.W.2d 220 (Tex.Civ.App. 1943, error dism.). Hence, the fourth day prior to the election is the last day for marking the ballot. For example, if an election is held on Saturday, the ballot must be marked before midnight of the preceding Tuesday.

"An elector desiring to vote absentee shall make written sworn application for an official ballot to the county clerk of the county of his residence, which application shall be signed by the elector, or by a witness at the direction of said elector in case of the latter's inability to make such written application because of physical disability."

Subdivisions 3 and 4 require that the elector execute an affidavit on the carrier envelope, to be signed by the elector or by a witness who assists him in event of physical disability.

Subdivision 6 provides that the special canvassing board shall compare the signatures on the application and upon the affidavit on the carrier envelope, and in case the board finds that the signatures correspond and that other requirements have been met, the board shall accept the ballot.

Subdivision 15 reads as follows:

"No assistance shall be given an elector in marking his absentee ballot except where the elector is entitled to assistance as provided in Section 95 of this Code. If the voter is entitled to assistance, he may be assisted by the clerk, notary public, or other officer before whom the ballot is marked, or by any other person selected by him, in the manner prescribed in Section 95 of this Code in so far as applicable, and subject to the restrictions and prohibitions contained in Section 95. The witness assisting the voter may perform any or all of the physical acts necessary to comply with the procedure for absentee voting. If the voter cannot sign his name, the witness shall sign the voter's name wherever such signature is required by this Code, and the name of the witness thereunder. Where any assistance is rendered in preparing an absentee ballot other than as herein allowed, the ballot shall not be counted but shall be void for all purposes."

Section 95 of the Election Code provides that no assistance shall be given a voter in preparing his ballot, except when a voter is unable to prepare the same himself because of some bodily infirmity, such as renders him physically unable to write or to see.

The only occasions for a person to sign with an "x" would be in case he was unable to write his name because of physical disability or because of illiteracy. The statute makes express provision for signature by a witness in event of physical disability.

This leaves for consideration the question of whether an application which is signed with an "X", but not bearing the signature of a witness assisting the elector because of physical disability, meets the statutory requirement.

Illiteracy is not a disqualification for voting. Tex. Const., Art. VI, Secs. 1 and 2; State v. Pease, 147 S.W. 649 (Tex.Civ. App. 1912). Qualified electors who are illiterate may vote at regular polling places, but they may not be given any assistance in marking their ballots. Art. 8.13, Election Code; Att'y Gen. Op. V-1524 (1952). Since the Constitution does not make illiteracy a disqualification, the Legislature would not have the power to enact a statute denying illiterates a right to vote at regular polling places. However, no qualified elector has a constitutional right to vote absentee. Article VI, Section 2 of the Constitution provides that "the Legislature may authorize absentee voting," leaving it to the Legislature to prescribe the classes of electors who may vote absentee and the conditions under which they may vote. So long as there is a reasonable basis for the regulation, the Legislature may impose such requirements as it deems appropriate, even though they deprive certain electors of the privilege of voting absentee.

In absentee voting, signatures are required on the application for an absentee ballot, on the affidavit appearing on the carrier envelope, and on the ballot stub. Article 5.06 of the Election Code contains the following provision for absentee ballots:

> "If the name of the elector does not appear on
> the reverse side of the stub, an election judge
> shall write the name of the elector on the back
> of said stub, together with his own signature,
> before depositing same in the stub box."

It is thus seen that signature of the stub by the voter himself or by a witness authorized to assist the voter is not essential. Your question, then, is narrowed to the signature on the application and on the carrier envelope.

Ordinarily a person's signature to an instrument may be indicated by a cross or other mark signifying his intent to execute the instrument. Art. 23, Revised Civil Statutes; Mortgage Bond Corporation v. Haney, 105 S.W.2d 488 (Tex.Civ.App. 1937, error ref.); Bustillos v. State, 152 Tex. Crim. 275, 213 S.W.2d 837 (1948). However, we are of the opinion that the signatures on absentee ballot applications and carrier envelopes are intended to serve purposes additional to signifying an intent to execute the instrument.

A written, signed application is required both where voters are voting by personal appearance in the clerk's office and where they are voting by mail. Obviously the application is required in this form because it is intended to serve some purpose in addition to conveying to the clerk the applicant's desire to receive an absentee

ballot. If that was the only purpose, a verbal application to the clerk would be sufficient. We think one purpose of the written, signed application is to provide a means for detecting applications made by persons falsely representing themselves to be the elector whose name is used.[2] The signature on the carrier envelope also serves a similar purpose. The provision in Subdivision 6 for comparison of the signatures on the application and on the carrier envelope reveals still another purpose: to establish identity between the person who applied for the ballot and the person who voted it. Signature by a mark would serve neither of these two latter-mentioned purposes. It is our conclusion that the language "signed by the elector" was intended to mean a writing of the elector's name in his own hand-writing, and that signature with an "X" does not meet the statutory requirement and is not a substantial compliance with it. Cf. original opinion in Walker v. Mobley, 105 S.W. 61 (Tex.Civ.App. 1907); Turner v. Teller, 275 S.W. 115 (Tex.Civ.App. 1925).

Subdivision 2 expressly waives the requirement for signature of the application by the elector in event of physical disability, but on no other ground. Under the familiar rule of "expressio unius exclusio alterius," it is our further conclusion that all other grounds are excluded. If the voter does not comply with this requirement, he has not properly executed the application. The fact that his failure to comply may have been occasioned by his illiteracy does not alter this conclusion. As previously stated, illiteracy would not keep him from being a qualified elector, but even though he is a qualified elector and can claim one of the grounds on which absentee voting is permitted, he is entitled to cast an absentee ballot only by compliance with the statutory requirements. The Legislature has seen fit to extend the privilege of absentee voting only to persons who can and do comply with the signature requirement, and there is a reasonable basis for having imposed it; namely, to assist in detection and prevention of unauthorized voting.

With regard to the affidavit on the carrier envelope, Subdivision 15 clearly prohibits assistance in marking an absentee ballot except where the voter is unable to write or to see because of physical disability. We construe the further provisions of this subdivision to mean that execution of the affidavit on the carrier envelope, which is a necessary part of preparation of the ballot, is also subject to these same regulations. If the voter is entitled to assistance, the witness assisting him may sign the affidavit for him; if he is not entitled to assistance, the voter himself must sign his name to the affidavit. One provision of Subdivision 15 reads: "If

---

[2]Since the 1959 amendment requiring that applications be sworn to, the requirement for a signed application also serves the purpose of making a written record of the oath. However, signature by a mark would meet the requirement for a written oath.

the voter cannot sign his name, the witness shall sign the voter's name wherever such signature is required by this Code, and the name of the witness thereunder." In our opinion, this provision does not broaden the conditions under which a witness may sign for the voter so as to include inability to sign for reasons other than physical disability.

In the light of the foregoing discussion, we hold that an application signed only with an "X" is not in compliance with the statute, and the clerk should not furnish a ballot thereon. Similarly, a ballot should not be accepted and counted where the affidavit on the ballot envelope is signed with an "X". We are not here passing on whether a ballot which had been furnished by the clerk and accepted by the election judges on an insufficient application or affidavit would be declared invalid in an election contest. But we do hold that these acts would be irregular and unauthorized.

You have also asked whether the same witness must act for the voter in executing the application and in executing the affidavit on the carrier envelope. In our opinion, this is not necessary. The only reason for holding that the same witness must act is because of the provision in Subdivision 6 for a comparison of the signatures. But similarity of signatures placed on the instruments by a witness would not establish identity between the person making the application and the person voting the ballot, which is the end sought by the comparison. Nor would the fact that the same witness had signed both instruments be of any significance in the detection of voting by someone else under the elector's name. Where different witnesses have signed for the elector, the provision for comparison of signatures may be disregarded.

### SUMMARY

The county clerk may accept applications for absentee ballots which are mailed to the clerk before the beginning of the period for marking absentee ballots, and the clerk may mail blank ballots to the applicants as soon as the ballots are available.

An application for an absentee ballot or an affidavit on the carrier envelope which is signed with an "X" is not properly executed. The voter must sign his name, except where he is assisted by a witness in the event of physical disability.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Mary K. Wall*
Mary K. Wall
Assistant

MKW:bh

APPROVED:

OPINION COMMITTEE
W.V. Geppert, Chairman

Houghton Brownlee, Jr.
J.C. Davis, Jr.
Riley Eugene Fletcher
Grundy Williams

REVIEWED FOR THE ATTORNEY GENERAL
BY:
        Leonard Passmore